562 F.2d 170
 10 ERC 1710, 1977-2 Trade Cases 61,632,
7 Envtl. L. Rep. 20,705
 MOBIL OIL CORPORATION, Gulf Oil Corporation, Shell Oil
Company and Standard Oil Company of California,
Plaintiffs-Appellees,
v.
FEDERAL TRADE COMMISSION and Michael Pertschuk, Chairman,
Paul Rand Dixon, member, M. Elizabeth Hanford Dole, member,
Calvin J. Collier, member and David A. Clanton, member and
Carol M. Thomas, Secretary, as officers of the Federal Trade
Commission, Defendants-Appellants.
 No. 1551, Docket 77-6073.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 17, 1977.
Decided Sept. 14, 1977.
 
 Nathaniel L. Gerber, Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., Samuel J. Wilson, Asst. U.S. Atty., New York City, of counsel), for defendants-appellants.
 Andrew J. Kilcarr, Washington, D. C., Vincent Tricarico, Thomas R. Trowbridge III, Donovan, Leisure, Newton & Irvine, New York City (Charles F. Rice, New York City, of counsel), for appellee Mobil Oil Corp.
 J. Wallace Adair, Keith E. Pugh, Jr., Howrey & Simon, Washington, D. C. (George S. Wolbert, Jr., S. R. Vandivort, A. M. Minotti, Houston, Tex., of counsel), for appellee Shell Oil Co.
 Jesse P. Luton, Jr., John E. Bailey, Houston, Tex., for appellee Gulf Oil Corp.
 George A. Sears, Richard W. Odgers, Pillsbury, Madison & Sutro, San Francisco, Cal., for Standard Oil Co. of California.
 Before VAN GRAAFEILAND, Circuit Judge, MOTLEY* and NEAHER,** District Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 The issue on this appeal is whether the Federal Trade Commission is required by § 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. § 4332(2) (C), to file an Environmental Impact Statement (EIS) at the outset of an adjudicatory proceeding brought pursuant to § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, because of the possibility that the proceeding might some day culminate in an order "significantly affecting the quality of the human environment."
 
 
 2
 On July 18, 1973, the Commission issued a complaint charging appellees and four other major oil companies with violating § 5. The complaint charged in substance that the respondents named therein combined to monopolize the refining of crude oil, restrain trade and maintain a non-competitive market structure. Rule 3.11(b)(3) of the Commission's Rules of Practice, 16 C.F.R. § 3.11(b)(3) provides that the complaint shall also contain "(w)here practical, a form of order which the Commission has reason to believe should issue if the facts are found to be as alleged . . . ." In this case, the complaint provided that "the Commission may order such relief as is necessary or appropriate in order to correct or remedy the effects of (respondents') anti-competitive practices."
 
 
 3
 On February 22, 1974, complaint counsel, upon the direction of the presiding administrative law judge, indicated that on the basis of current information they were prepared to urge certain remedies. These included divestiture of 40 to 60 percent of respondents' refinery capacity, divestiture of certain pipe lines, a ban against future refinery acquisitions and limitations on joint ventures and processing arrangements. Counsel also stated, however, that the appropriateness of the remedies would be determined "on the basis of a full litigative hearing before the administrative law judge" and that "on the basis of such hearings, the proposed relief may be modified." Moreover, the Commission itself has never approved or endorsed the suggested proposals for relief.
 
 
 4
 Section 102(2)(C) provides in part that all agencies of the federal government shall:
 
 
 5
 (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
 
 
 6
 (i) the environmental impact of the proposed action,
 
 
 7
 (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 
 
 8
 (iii) alternatives to the proposed action,
 
 
 9
 (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 
 
 10
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 11
 On June 17, 1974, respondents moved before the administrative law judge for an order requiring complaint counsel to file such an EIS. This motion was denied because Rule 1.82(d) of the Commission's Rules of Practice, 16 C.F.R. § 1.82(d), specifically provides that § 102(2)(C) does not apply to any adjudicatory proceeding commenced by the Commission.[1] Administrative relief by appeal and extraordinary review was denied respondents, and they then turned to the District Court.
 
 
 12
 On June 6, 1975, appellees commenced this action in the Southern District of New York seeking a declaration that Rule 1.82(d) is invalid and an order that the Commission be required to file an EIS. Both sides moved for summary judgment. On March 2, 1976, the District Court granted plaintiffs' motion, holding Rule 1.82(d) to be null and void and directing the FTC to prepare a draft EIS. By subsequent order, the District Court directed the FTC to prepare and distribute the draft statement by September 12, 1977. The Commission's appeal brings both orders before us for review.
 
 
 13
 Discussion of the need for an EIS ought logically to proceed in two stages, the first labeled "If" and the second, "When". Following this pattern, the Commission argues first that NEPA does not require the preparation of an EIS in a § 5 adjudicatory proceeding and that the District Court erred in invalidating Rule 1.82(d) which so provides. Falling back to the second position, the Commission contends that, if an EIS must be prepared, the proper time to do so is when the proceeding reaches the remedial stage. Because we are convinced of the merits of the Commission's second argument and it is completely dispositive of appellees' claim for relief, we move directly to that contention.
 
 
 14
 Although the § 5 proceeding was commenced in 1973, it is still in the preliminary discovery stages. It is reasonable to anticipate that a substantial additional period will elapse before hearings are concluded and the hearing examiner makes the initial decision contemplated by Rule 3.51(b), 16 C.F.R. § 3.51(b). This decision may or may not order affirmative remedial relief. See, e. g., Litton Industries, 85 F.T.C. 333 (1974). Moreover, if relief is ordered by the Commission, it need not mirror that which was proposed in the original complaint. See, e. g., FTC v. National Lead Co., 352 U.S. 419, 427-28, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957); National Dynamics Corp. v. FTC, 492 F.2d 1333, 1336 n.2 (2d Cir.), cert. denied, 419 U.S. 993, 95 S.Ct. 303, 42 L.Ed.2d 265 (1974). In view of the speculative nature of what lies ahead, this is not the time for filing an EIS.
 
 
 15
 In Aberdeen & Rockfish Railroad v. Students Challenging Regulatory Agency Procedures, 422 U.S. 289, 320, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975), and again in Kleppe v. Sierra Club, 427 U.S. 390, 401 n.12, 406, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), the Supreme Court made it clear that an agency must prepare an EIS at the time it makes a recommendation or report on a specific proposal for federal action. It need not be prepared "during the germination process of a potential proposal." Kleppe, supra, at 406, 96 S.Ct. at 2729. Federal action which requires an EIS under NEPA is action " significantly affecting the quality of the human environment." Such action does not take place at the commencement of a § 5 adjudicatory proceeding but occurs, if at all, when the final order is issued by the Commission. This is the " critical agency decision" to which this Court referred in Natural Resources Defense Council, Inc. v. Callaway, 524 F.2d 79, 92 (2d Cir. 1975). Prior to that time, there will have been no "irreversible and irretrievable commitments of resources" to action affecting the environment. See NEPA § 102(2)(C)(v); Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 328 (9th Cir. 1975); Friends of the Earth v. Coleman, 513 F.2d 295, 299 (9th Cir. 1975); Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission, 156 U.S.App.D.C. 395, 481 F.2d 1079, 1094 (1973).
 
 
 16
 Preparation of an EIS is not a project lightly to be undertaken. See, e. g., Trinity Episcopal School Corp. v. Romney, 523 F.2d 88, 92-94 (2d Cir. 1975). The volume of litigation involving the adequacy of these statements attests clearly to this fact. See, e. g., County of Suffolk v. Secretary of the Interior, 562 F.2d 1368 (2d Cir. 1977); Chelsea Neighborhood Association v. United States Postal Service, 516 F.2d 378 (2d Cir. 1975). NEPA does not intend that the FTC may be indefinitely delayed in undertaking its statutory duties by controversy over an EIS concerning events which may never occur.
 
 
 17
 In Gifford-Hill & Co. v. FTC, 173 U.S.App.D.C. 135, 523 F.2d 730 (1975), the District of Columbia Circuit arrived at the same result we now reach but by a different route. The court there held that the plaintiff had no standing to sue because its alleged injury arising out of the FTC proceeding did not affect an interest within the zone of interests protected by NEPA and because the FTC's decision to prosecute was not a final agency action reviewable under the Administrative Procedure Act. The court also held that judicial review of the FTC's decision could not be secured by interlocutory appeal, even though sought by an independent suit in the District Court. While Gifford-Hill may not be in complete accord with this Court's holdings on standing and reviewability, see, e. g., Rochester v. United States Postal Service, 541 F.2d 967, 972-73 (2d Cir. 1976); Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, supra, 2 Cir., 539 F.2d 824 at 836-38, there is no conflict concerning the end result. We agree with the District of Columbia Circuit that this is not the time for suit.
 
 
 18
 In making this determination, we find it unnecessary to adjudicate the validity of Rule 1.82(d) in its entirety. Rule 1.82(d) provides in part that § 102(2)(C) of NEPA does not apply to "any adjudicatory proceedings commenced by the Commission", and we are concerned here with the commencement of proceedings only. Following the cardinal rule of construction which "is to save and not to destroy", NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937); Northern Natural Gas Co. v. O'Malley, 277 F.2d 128, 134 (8th Cir. 1960), we find no irreconcilable conflict between this portion of the Rule, as applied to the facts of this case, and § 102(2)(C) of NEPA. We leave to another day the determination as to whether an EIS must precede the final order herein, the likelihood and contents of which are now but matters of speculation.[2] See Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 112 (1962); Eccles v. Peoples Bank, 333 U.S. 426, 432, 68 S.Ct. 641, 92 L.Ed. 784 (1948). If this determination is made in anticipation of a final order, the proceeding will have "reached sufficient maturity to assure that judicial intervention will not hazard unnecessary disruption." Kleppe v. Sierra Club, supra, 427 U.S. at 406 n.15, 96 S.Ct. at 2729.
 
 
 19
 The orders appealed from are reversed. The case is remanded to the District Court with instructions to dismiss.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 **
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Rule 1.82(d) reads in its entirety as follows:
 Nothing in this procedure shall be construed as stating or implying that section 102(2)(C) of NEPA applies to: any investigation made by the Commission for law enforcement purposes; any process or order issued by the Commission in connection with any type of investigation; any agreement of voluntary compliance or consent decree entered into by the Commission; or any adjudicatory proceedings commenced by the Commission.
 
 
 [2]
 In Gifford-Hill & Co. v. FTC, supra, 523 F.2d at 733, the court said:
 Gifford-Hill's environmental claim is based on the possible result of a divestiture order which may never be entered, either because the challenged acquisition is found lawful or because some other remedy is deemed more appropriate. Moreover, during the adjudicatory proceeding both Gifford-Hill and the staff of the FTC can present evidence about environmental factors. That evidence can be considered as it relates to shaping a remedy, if the acquisition violates the antitrust laws, and the administrative law judge and the FTC can determine whether an environmental impact statement is required before a final order is entered. In view of these opportunities for the FTC to comply with NEPA's requirements during the adjudicatory proceeding and of the ability of Gifford-Hill to challenge any failure to do so in its appeal from the Commission's final order, allowing this action to be maintained would serve no purpose other than the company's apparent desire for the delay. (Footnotes omitted.)